CHRISTOPHER M. YOUNG (Bar No. 163319)
christopher.young@us.dlapiper.com
RUTH N. DAPPER (Bar No. 302498)
ruth.dapper@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel:   619.699.2700
Fax:   619.699.2701

MICHELLE CHUNG (Bar No. 312833)
michelle.chung@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

Attorneys for Defendant
CHATTEM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| RUTHIE MARTIN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHATTEM, INC.; SANOFI, INC.; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 2:19-cv-06464-ODW-PJW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CHATTEM, INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Judge:   Hon. Otis D. Wright, II<br>Dept.:   5D<br>Date:    September 23, 2019<br>Time:    1:30 p.m.<br><br>Complaint Filed: May 16, 2019<br>Action Removed:  July 25, 2019<br>Trial Date:  Not Set |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF FACTS ...........................................................................1

    **A.**   Allegations in the Complaint ...........................................................1

    **B.**   Defendant's Removal Of This Action To Federal Court And
          Plaintiff's Motion to Remand ..........................................................3

III.  Plaintiff relies on inapplicable standards and improperly attempts to
     revise her own allegations ..........................................................................4

    **A.**   There Is No Presumption Against Removal Under CAFA ...............4

    **B.**   Plaintiff Ignores The Relevant Standard For Removal And
          Submits No Proof To Support A Challenge To Defendant's
          Claim To Jurisdiction......................................................................4

    **C.**   Plaintiff Improperly Attempts To Revise The Complaint To
          Avoid The Jurisdiction Of This Court .............................................6

IV.   Defendant Satisfied Its Burden For Removal and This Court Has
     Jurisdiction Over this Action......................................................................8

    **A.**   Defendant Demonstrated Its Restitution Calculation By A
          Preponderance Of Evidence.............................................................8

    **B.**   Defendant Demonstrated Its Compensatory Damages Calculation
          By A Preponderance Of Evidence ....................................................9

        1.   Defendant's Estimated Number Of Class Members Was
             Properly Based Off The Allegations Of The Complaint.........10

        2.   Defendant's Physical Injury Calculations Were
             Conservative Based On The Allegations Plaintiff Set Forth
             In The Complaint...................................................................10

        3.   Defendant's Economic Injury Calculations Were
             Conservative Based On The Allegations Plaintiff Set Forth
             In The Complaint...................................................................11

    **C.**   Injunctive Relief, Punitive Damages, And Attorney's Fees Are
          All Properly Included In The Calculation Of Removal, And
          Defendant Supported These Calculations By A Preponderance
          Of Evidence....................................................................................12

1. Defendant Demonstrated That Injunctive Relief Is Included In The Amount In Controversy ...............................13

2. Defendant Demonstrated That Punitive Damages Are Included In The Amount In Controversy ...............................13

3. Defendant Demonstrated That Attorney's Fees Of More Than $1.2 Million Are Included In The Amount In Controversy....................................................................14

**D.** Defendant Has Demonstrated That The Amount In Controversy Greatly Exceeds $5 Million ..............................................................15

V.   CONCLUSION ...........................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Anderson v. Seaworld Parks & Entm't, Inc.*,
 132 F. Supp. 3d 1156 (N.D. Cal. 2015) ............................................................. 13

*Bayol v. Zipcar, Inc.*,
 No. 14-cv-2483, 2015 WL 4931756 (N.D. Cal. Aug. 18, 2015) ........................ 14

*Brady v. Mercedes-Benz USA, Inc.*,
 243 F.Supp.2d 1004 (N.D. Cal. 2002) ............................................................... 14

*Broadway Grill, Inc. v. Visa Inc.*,
 856 F.3d 1274 (9th Cir. 2017) .............................................................................. 7

*Clay v. Chobani LLC*,
 No. 14cv2258 BEN DBH, 2015 WL 4743891 (S.D. Cal. Aug. 10,
 2015) ................................................................................................................. 4, 6

*Cohn v. Petsmart, Inc.*,
 281 F.3d 837 (9th Cir.2002) .................................................................................. 7

*Coleman v. Estes Exp. Lines, Inc.*
 631 F.3d 1010 (9th Cir. 2011) .............................................................................. 9

*Coleman v. Estes Express Lines, Inc.*,
 730 F. Supp. 2d 1141 (C.D. Cal. 2010) ..................................................... 9, 10, 11

*Dada v. CyberCoders, Inc.*,
 No. SACV1801023JVSJDEX, 2018 WL 6133673 (C.D. Cal. July
 16, 2018) ............................................................................................................... 7

*Dart Cherokee Basin Operating Co. v. Owens*,
 135 S. Ct. 547 (2014) ......................................................................................... 4, 5

*Gaus v. Miles, Inc.*,
 980 F.2d 564 (9th Cir. 1992) ................................................................................ 4

*Gibson v. Chrysler Corp.*,
 261 F.3d 927 (9th Cir.2001) ............................................................................... 13

*Guglielmino v. McKee Foods Corp.*,
 506 F.3d 696 (9th Cir. 2007) .............................................................................. 14

*Johnson v. Pushpin Holdings, LLC*,
 748 F.3d 769 (7th Cir. 2014) .............................................................................. 14

*LaCross v. Knight Transp. Inc.*,
 775 F.3d 1200 (9th Cir. 2015) ........................................................................ 6, 12

*Morris v. LiquidAgents Health Care, LLC*,
   No. 12-CV-4220 YGR, 2012 WL 5451163 (N.D. Cal. Nov. 7, 2012) ................ 7

*Muniz v. Pilot Travel Centers LLC*,
   No. S–07–0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. April 30,
   2007) .................................................................................................................. 13

*Rippee v. Boston Market Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005) ............................................................... 13

*Sanchez v. Monumental Life Insurance Co.*,
   102 F.3d 398 (9th Cir. 1996) ........................................................................... 6, 7

*Schneider v. Ford Motor Co.*,
   756 F. App'x 699 (9th Cir. 2018) ...................................................................... 12

*Simmons v. PCR Tech.*,
   209 F.Supp.2d 1029 (N.D. Cal. 2002) ............................................................... 15

*Singer v. State Farm Mutual Auto. Ins.*
   116 F.3d 373 (9th Cir. 1997) ............................................................................... 5

*Stern v. RMG Sunset, Inc.*,
   Case No.: 17-CV-1646 JLS (NLS), (S.D. Cal. May. 21, 2018) ......................... 15

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
   No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512 (C.D. Cal. Mar. 3,
   2015) .................................................................................................................. 10

**STATUTES**

Cal. Civ. Code § 1780(a)(4) ..................................................................................... 13

Defendant Chattem, Inc. ("Defendant") respectfully submits this memorandum of points and authorities in opposition to the motion to remand filed by Plaintiff Ruthie Martin ("Plaintiff").

## I. INTRODUCTION

Plaintiff brings this motion to remand arguing the Court lacks jurisdiction because Defendant allegedly did not demonstrate that the amount in controversy is met for removal under the Class Action Fairness Act (CAFA). In support of her arguments, Plaintiff incorrectly attempts to hold Defendant to a seemingly impossible standard of needing to "prove" in detail the allegations of *Plaintiff's* Complaint. Further, Plaintiff attempts to apply burdens to Defendant that the United States Supreme Court has specifically determined are inapplicable in this context; attempts to refute allegations pleaded in her own Complaint; and attempts to add conditions into her Complaint that are not pleaded.

Plaintiff cannot persuasively disrupt this Court's jurisdiction. Instead, as Defendant established in its removal papers and will elaborate on in this Opposition, Defendant has conservatively and carefully demonstrated that the amount in controversy in this litigation far exceeds $5 million. While Plaintiff inappropriately attempts to hold Defendant to an unattainable standard of detail, the fact remains that the allegations in the Complaint, multiple declarations submitted by Defendant, and prevailing law, all establish that jurisdiction of this Court is proper.

## II. SUMMARY OF FACTS

### A. Allegations in the Complaint

Plaintiff filed this action in Los Angeles Superior Court on May 16, 2019. Plaintiff then served the Complaint on Defendant on June 25, 2019. Plaintiff's Complaint is a putative class action "for damages and equitable relief against Defendants relating to their formation, manufacture, testing, marketing, promotion, distribution, and sale of their … ICY HOT MEDICATED NO MESS APPLICATOR." (Compl. ¶ 4.) The Complaint alleges that the Icy Hot Applicator

is "sold throughout California in **hundreds** of retail locations" and that the use of the product "causes pain and unsightly irritation, burns, redness, cracking, and other signs of damage and irritation to the skin."  (Compl. ¶¶ 7-8 (emphasis added).) When "applied as intended," Plaintiff alleges, the Icy Hot Applicator "**frequently** causes these adverse reactions and injuries."  (Compl. ¶ 8 (emphasis added).)

Regarding Plaintiff's experience using the Icy Hot Applicator, Plaintiff alleges that within minutes of using the product, she developed irritation, "which then turned into a burn," and "cracked" her skin, which injuries took "two weeks to heal" and has left her "marked by scars." (Compl. ¶ 11.)  Plaintiff alleges that there have been a "string of consumer complaints from 2015 to 2019" regarding consumers allegedly having similar reactions after using the Icy Hot Applicator, including experiencing "a chemical burn," "completely burn[ing]" the skin, feeling like their skin "was on fire," and causing "unbearable" pain.  (Compl. ¶ 23.)

Plaintiff alleges in the Complaint that there are "**hundreds of thousands**" of members in the putative class. (Compl. ¶ 28 (emphasis added).) The Class is defined as "[A]ll citizens in California who purchased the [Icy Hot Applicator]." (Compl. ¶ 27.)

Based on these allegations and on behalf of the putative class, the Complaint alleges eight causes of action:  1) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; 2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.; 3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; 4) breach of express warranty; 5) breach of implied warranty of merchantability; 6) unjust enrichment; 7) strict products liability; and 8) negligence.

As relief, Plaintiff seeks "compensatory, statutory, and punitive damages"; "restitution and all other forms of equitable monetary relief"; "an order enjoining Defendants from continuing the unlawful practices"; attorneys' fees; and declaratory relief. (Compl. Prayer for Relief.)

**B.      Defendant's Removal Of This Action To Federal Court And Plaintiff's Motion to Remand**

Defendant timely removed this action to the present Court on July 25, 2019. (*See generally* Def.'s Notice of Removal.)  In doing so, Defendant relied on CAFA to address each of the elements supporting removal, including that the proposed class consists of more than 100 members, that CAFA minimal diversity exists, and that the amount in controversy exceeds $5 million.  (*Id.*)  Regarding the amount in controversy, Defendant accounted for amounts related to Plaintiff's claims for restitution, compensatory damages, injunctive relief, punitive damages, and attorneys' fees.  Supporting its calculation, Defendant included a declaration from Chattem's Manager of Financial Initiatives, Brian Nutter; cited the factual allegations in the Complaint; and included statutory and case law supporting Defendant's calculations.  (*See* Def.'s Notice of Removal at 3-7.)

Plaintiff now brings the present motion for remand, attempting to challenge this Court's jurisdiction by attacking Defendant's removal of this action.  Plaintiff challenges only the amount in controversy, conceding that the other elements of CAFA removal are satisfied.  Plaintiff's challenge fails on multiple grounds.  First, several of Plaintiff's underlying assumptions are incorrect.  Plaintiff relies on outdated and inapplicable legal standards, attempts to ignore the actual burden in the context of removal, and further attempts to discount allegations that she made in the Complaint (such as the time span of the putative class) in order to evade federal jurisdiction.  Second, Defendant demonstrated at the time of removal that federal jurisdiction was entirely appropriate, as the amount in controversy, even by a conservative estimate, is well in excess of $5 million.  In short, addressing each of the challenges lodged by Plaintiff, it is apparent that Plaintiff's motion should fail.

### III. PLAINTIFF RELIES ON INAPPLICABLE STANDARDS AND IMPROPERLY ATTEMPTS TO REVISE HER OWN ALLEGATIONS

### A. There Is No Presumption Against Removal Under CAFA

As an initial matter, relying on a non-CAFA removal case, Plaintiff argues there is a "strong presumption" against removal.  (Pl.'s Opp. 3 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).)  Plaintiff is mistaken.

As noted by the United States Supreme Court, there is no presumption against removal for CAFA cases:  "It suffices to point out that **no antiremoval presumption attends cases invoking CAFA**, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (emphasis added) (holding that the district court erroneously applied a presumption against removal of a CAFA claim).  While Plaintiff attempts to rely on *Gaus v. Miles, Inc.*, a 1992 Ninth Circuit case stating there is a presumption against removal, *Gaus*'s statement regarding that presumption is inapplicable in the CAFA context.  *See, e.g.*, *Clay v. Chobani LLC*, No. 14cv2258 BEN DBH, 2015 WL 4743891, *5 n.3 (S.D. Cal. Aug. 10, 2015) ("*Gaus* is distinguishable because it did not deal with removal under CAFA original jurisdiction.").  As such, Plaintiff's multiple statements regarding a presumption against CAFA removal are mistaken.

### B. Plaintiff Ignores The Relevant Standard For Removal And Submits No Proof To Support A Challenge To Defendant's Claim To Jurisdiction

In support of her motion, Plaintiff attempts to convince the Court that "Chattem's bid to stay in federal court hinges on [a] single statement" in its "only evidence," which is "a single declaration." (*See, e.g.*, Pl.' MPA 1:3, 7.) Plaintiff is referring to the Declaration of Brian Nutter ("Nutter Declaration"), which was submitted with Defendant's removal papers. Plaintiff's attempt to argue that Defendant's only support was the Nutter Declaration misrepresents the standard of proof necessary to support a removal, and is plainly inaccurate.

On removal, Defendant was not required to submit any evidentiary support. Instead, when a defendant alleges the amount in controversy exceeds the CAFA threshold, the notice to remove need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. A defendant's amount-in-controversy allegation "should be accepted when not contested." *Id.* at 553.

When a defendant's statements regarding the amount in controversy are challenged by the plaintiff, only then do "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 135 S. Ct. at 553-554 (internal quotations omitted). Despite Plaintiff's claims that Defendant's proof was somehow insufficient, Plaintiff has not submitted any "proof" at all in support of her motion to remand.[1] (*See generally* Pl.'s Mot. Remand.)

Unlike Plaintiff, Defendant has fully supported its assertions regarding jurisdiction. On removal, Defendant submitted the Nutter Declaration, in which Mr. Nutter identified that Defendant's records establish that "the value of sales of the Icy Hot Applicator specifically to retail outlets within the State of California from 2014 to present **substantially exceeds $5 million**." (Nutter Decl. Supp. Removal ¶ 4 (emphasis added).) Defendant carefully supported its removal by identifying the claims alleged, the relief sought, evaluating the amount in controversy based on the

---

[1] Plaintiff, in her evidentiary objections and in her memorandum, argues that Defendant is "required" to submit "summary-judgment-type evidence." (*See, e.g.*, Pl.'s MPA at 3:28-4:3.) Plaintiff relies on *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) for this statement. First, *Singer* is not a CAFA action. Second, Plaintiff argues that Defendant is "required" to submit "summary-judgment-type evidence" (although Plaintiff submits none) whereas the Ninth Circuit in *Singer* only said a court "may" consider that type of evidence from the *parties*. The context of *Singer* relates to the district court's ability to take a "formal judicial admission made in open court by the plaintiff's attorney that the amount in controversy exceeds $50,000 [the jurisdictional amount at that time]." The Ninth Circuit determined it was in the district court's discretion, and that the district court may consider summary-judgment-type evidence, thus the district court was properly in the scope of its discretion to credit the plaintiff's attorney's statement. *Id.* at 376. The *Singer* court did not at all require that all removals be supported to the same standard as summary judgment, which is how Plaintiff is attempting to present *Singer*.

allegations and class definition in the Complaint, and then—in an abundance of support—also provided the Nutter Declaration.  Plaintiff cannot reasonably assert that more evidentiary support is required to effect a removal.  *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015) (plausible allegation that amount in controversy is met is sufficient until challenged).  Thus, for removal purposes, Defendant's removal was amply supported, and it is only at this stage (when challenged by a remand motion) that Defendant would be expected to provide additional insight.  Defendant has satisfied its burden and Plaintiff has wholly failed to contest Defendant's showing.

**C.    Plaintiff Improperly Attempts To Revise The Complaint To Avoid The Jurisdiction Of This Court**

Finally, in an additional ineffective challenge to the declaration of Mr. Nutter, Plaintiff challenges the date range for the sales data discussed in the Nutter Declaration.  That declaration included information about 2014 to present, but Plaintiff now argues that the longest statute of limitations in this action is four years, *i.e.*, starting in 2015.  (Pl.'s MPA 4:9-5:11.)  Once again, Plaintiff's argument is a red herring.

Within the Complaint, Plaintiff defines her class as "[A]ll citizens in California who purchased the Defective Product." (Compl. ¶ 27.)  Plaintiff provides no time limitation in the class definition.  Accordingly, Defendant captured five years of data, despite Plaintiff's entirely open-ended date range.  Plaintiff cannot reasonably argue that Defendant's "underlying assumptions and calculations are erroneous" when, in fact, Defendant actually *narrowed* the over breadth of the Complaint by providing 2014 as a starting point.[2]  *Clay*, 2015 WL 4743891, at *4

---

[2] Plaintiff cites *Sanchez v. Monumental Life Insurance Co*., 102 F.3d 398, 405 (9th Cir. 1996) in an attempt to support her argument that Defendant's use of five years was inappropriate.  The *Sanchez* case is clearly distinguishable from the present circumstances.  *Sanchez* involved a narrow holding applying to a specific statute, with the court finding that defendant's argument was premised on a "fundamental misunderstanding of section 3345," which provides for trebling punitive damages for unfair or deceptive practices against senior citizens or persons with

(finding amount in controversy met where "Defendants have relied on the factual allegations in the Complaint" (citation omitted)).

Plaintiff cannot plead an extremely broad complaint and then, in an effort to avoid federal jurisdiction, claim that Defendant's calculations *based on Plaintiff's allegations* are "flawed."  Courts routinely reject similar attempts.  *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017) ("In this case plaintiffs have attempted to do what CAFA was intended to prevent:  an amendment changing the nature of the class to divest the federal court of jurisdiction."); *Dada v. CyberCoders, Inc.,* No. SACV1801023JVSJDEX, 2018 WL 6133673, at *3 (C.D. Cal. July 16, 2018) (same, and involving same Plaintiff's counsel pursuing the present action).

Finally, while Defendant considers the Nutter Declaration to fully support Defendant's claim to jurisdiction, in an abundance of caution, Defendant has submitted a second declaration[3] by Brian Nutter in support of this Opposition. This second declaration notes that, even limiting the sales period from May 2015 to July 2019, which are the dates Plaintiff now argues are appropriate, Defendant still exceeds the $5 million threshold in sales alone. This $5 million, of course, does not include the multiple millions that are in controversy based on the other relief Plaintiff seeks (as discussed below).  In short, Plaintiff's challenge to the Nutter Declaration submitted by Defendant on removal is unfounded and, even if that declaration had been insufficient, Defendant has submitted a second declaration again demonstrating the amount in controversy is satisfied.

---

disabilities.  The defendant tried arguing that he could treble contract damages, but *Sanchez* found that on the face of the statute, trebling is allowed only for fines and penalties.  Thus, the circumstances of *Sanchez* are distinct from the present circumstances.

[3] "A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice."   *Morris v. LiquidAgents Health Care, LLC*, No. 12-CV-4220 YGR, 2012 WL 5451163, at *2 (N.D. Cal. Nov. 7, 2012) (considering supplemental declaration and remanding on other grounds); *Cohn v. Petsmart, Inc*., 281 F.3d 837, 840 n.1 (9th Cir.2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal.").

## IV.   DEFENDANT SATISFIED ITS BURDEN FOR REMOVAL AND THIS COURT HAS JURISDICTION OVER THIS ACTION

In support of her motion to remand, Plaintiff challenges Defendant's calculation as to restitution, damages from physical injury, damages from economic injury, attorney's fees, punitive damages, and injunctive relief.  As shown below, none of Plaintiff's arguments effectively challenge the amount in controversy in this action.

### A.   Defendant Demonstrated Its Restitution Calculation By A Preponderance Of Evidence

Plaintiff alleges an entitlement to restitution throughout her Complaint. Specifically, she seeks "to restore Plaintiff and Class members the money they paid" for the Icy Hot Applicator. (Compl. ¶ 55.) She also alleges Defendant has been "unjustly enriched in retaining revenues derived from Plaintiff's and Class members' purchases" of the Icy Hot Applicator, and seeks "full restitution of all monies paid to Defendants[.]"  (Compl. ¶¶ 55, 67, 82, 83.)  Defendant directly addressed Plaintiff's restitution demand in its removal, noting the value of sales from Defendant to its customers alone exceeds $5 million.[4] (Def.'s Notice of Removal at 4:8-23.)

Attempting to challenge Defendant's calculation as to restitution, Plaintiff ignores the multiple direct quotes from Plaintiff's Complaint that Defendant cited in its removal papers.  Instead, Plaintiff focuses its argument on Defendant's reference to "disgorgement of these revenues."  (Pl.'s MPA at 5:15-17; Def.'s Notice Of Removal at 4:19.)  In challenging the "disgorgement" language, Plaintiff emphasizes that she is seeking "full restitution" but not "disgorgement."  (Pl.'s MPA at 5:15-17.) In making this argument, however, Plaintiff provides no meaningful

---

[4] As set forth in Defendant's removal, the precise sales figures constitute confidential business information.  (Def.'s Notice of Removal n.2;Nutter Decl. Opp. Remand ¶ 6.) To the extent it would aid the Court to review these figures *in camera*, Defendant will provide this information for the Court's *in camera* review.

explanation of how disgorgement of revenues or "full restitution" are meaningfully different from each other in the removal context.[5]  Defendant properly provided a declaration noting the amount it received from its sales of the product to its customers in California from 2014 to July 2019, and now has provided an additional declaration regarding its sales during a more limited time period of May 2015 to July 2019.  (Nutter Decl. Opp. Remand ¶¶ 2-5.)  Under either time period, the sales exceeded $5 million.  Plaintiff has plainly failed to demonstrate why such a calculation is not an appropriate measure of restitution at this time, and thus has failed to effectively challenge the removal on this ground.  *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'"  (citation omitted), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011).  This relief alone is properly calculated as more than $5 million.

### B.   Defendant Demonstrated Its Compensatory Damages Calculation By A Preponderance Of Evidence

As detailed above, Plaintiff claims the Icy Hot Applicator caused burns, permanent scarring, cracked skin, and led to a "string of consumer complaints." (Compl. ¶ 23.)  Plaintiff's Complaint alleges these injuries to "***hundreds of thousands***" of individuals.  (Compl. ¶ 28 (emphasis added).)  As Plaintiff attempted to do throughout her remand motion, she attempts here to adjust the allegations set forth in her Complaint in order to controvert Defendant's well supported removal papers.  Specifically, Plaintiff challenges (1) the number of class members, (2) the

---

[5] Moreover, with Plaintiff alleging that "hundreds of thousands" of individuals experienced burns, scarring, and physical injury, which took "weeks" to recover from, Plaintiff is alleging the purchasers did not receive the benefit they believed they would receive. As such, the amount Defendant received is an appropriate guide for "full restitution for all monies paid to Chattem." (*See, e.g.*, Compl. ¶¶ 28, 55, 67, 83.)  Moreover, because Defendant's sales are to retailers/distributors, the actual prices paid by the consumer are presumably higher than those at which Defendant sold the product.

calculation of physical injury, and (3) the calculation of economic injury. Each of Plaintiff's arguments fails.

### 1.   Defendant's Estimated Number Of Class Members Was Properly Based Off The Allegations Of The Complaint

In addressing the calculations of injury to putative class members, Plaintiff argues Defendant fails to offer evidence that 200,000 putative class members suffered injuries from use of Icy Hot Applicators. (Pl.'s MPA 5:25-27.) Again, however, Plaintiff cannot rightfully ignore that her Complaint alleges that "members of the Class number in the hundreds of thousands." (Compl. ¶ 28.) As such, in a conservative estimate based on that allegation, Defendant estimated the "hundreds of thousands" to be 200,000, the minimum number that could constitute "hundreds of thousands." Plaintiff cannot rightfully challenge calculations based on her own complaint, nor must Defendant "prove" the allegations in Plaintiff's complaint. *Coleman*, 730 F. Supp. at 1148; *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *2 (C.D. Cal. Mar. 3, 2015) ("a court should deny a motion to remand where a defendant calculates the amount in controversy by relying on the clear allegations of the complaint regarding the frequency of violation and potential liability calculations supported by real evidence").

### 2.   Defendant's Physical Injury Calculations Were Conservative Based On The Allegations Plaintiff Set Forth In The Complaint

Turning to the calculation of compensatory damages for physical injury, Plaintiff attempts to argue that Defendant declared that the damages of each putative class member is $25. (Pl.'s MPA at 6:1-4.) Defendant made no such assertion, and a fair reading of Defendant's removal papers does not establish that Defendant is definitively asserting that there were $25 of personal injury per putative class member. Instead, as Defendant explained in its removal, "even if" each putative class member's injuries were just $25, the personal injury damages alone would

amount to $5 million (200,000 x 25).  (Def.'s Notice of Removal 5:25-28.)
Similarly, and for the sake of argument, even if the class size was only 100,000 and
only **1%** of the proposed class (or 1,000 individuals) suffered damages of only
$5,000 due to their injuries, the amount in controversy would still be met *based on
this relief alone*.  Plaintiff has alleged injuries on behalf of the class including burns,
chemical damage, permanent scars, and weeks of recovery.  These allegations, in
light of the "hundreds of thousands" of class members alleged, plainly exceed the
amount-in-controversy threshold.  Again, Defendant properly based the damages at
issue and size of the putative class on the allegations in the Complaint.  *Coleman*,
730 F. Supp. 2d at 1148 ("In deciding the amount in controversy, the Court looks to
what the plaintiff has alleged, not what the defendants will owe").  Plaintiff cannot
reasonably challenge those calculations now, and this amount alone exceeds $5
million.

### 3. Defendant's Economic Injury Calculations Were Conservative Based On The Allegations Plaintiff Set Forth In The Complaint

Plaintiff allegedly purchased the Icy Hot Applicator for $5.48.  (Compl. ¶ 11.)
Her proposed class allegedly includes "hundreds of thousands" of consumers who
made similar purchases.  (Compl. ¶ 28.)  While Defendant does not sell directly to
consumers (Nutter Declaration Supp. Removal ¶ 2), Defendant's records indicate
that sales of the Icy Hot Applicator to its customers in California exceed $5,000,000.
(*Id.* ¶ 4; Nutter Decl. Opp. Remand ¶¶ 3-5.)

Despite this sworn evidentiary support regarding its sales amounts, Plaintiff
argues that Defendant must demonstrate how many consumers actually bought the
product from any and all retailers/distributors, rather than how many Icy Hot
Applicators were sold over the course of four years.  (Pl.'s MPA at 6:13-23.)  Such
an exacting standard would be extremely difficult to meet at the summary judgment
stage, let alone the removal stage.  Plaintiff's position is shown to be even more
unreasonable when reviewed in light of Plaintiff's assertion that "Chattem has no

way" of knowing this information in order to provide these calculations. (Pl.'s MPA at 6:20-23.)

Courts faced with similarly outlandish arguments against removal have soundly rejected them. *See, e.g.*, *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 (9th Cir. 2018) (rejecting argument that MSRP was not adequate estimated price for Ford trucks sold where plaintiff argued that he needed actual sale prices, with court noting "it is reasonable to assume that most purchasers did not buy trucks for tens of thousands of dollars less than the MSRP"). Similarly, with Defendant Chattem having achieved more than $5 million in sales over four years, which it has demonstrated to the Court through sworn declarations, it is reasonable to conclude that those products actually sold at the retailer, and not for less than Chattem sold them for. Plaintiff's argument that it is "critical" to know exactly how many California citizens purchased Icy Hot Applicators in the past four years, especially when Defendant (or Plaintiff) does not have this information, is wholly unsupported by the law governing CAFA removals. *LaCross*, 775 F.3d at 1201 (in CAFA context, noting defendant must only "present[] sufficient evidence to establish that the amount in controversy exceeds $5 million" and reversing district court's determination that the amount in controversy was not satisfied).

### C.   Injunctive Relief, Punitive Damages, And Attorney's Fees Are All Properly Included In The Calculation Of Removal, And Defendant Supported These Calculations By A Preponderance Of Evidence

Plaintiff only cursorily addresses the value of her claims for injunctive relief, punitive damages, and attorneys' fees. But the Court should not be misled—these three claims for relief are properly included in the calculation of the amount in controversy, and Plaintiff concedes that point by not arguing otherwise. (Pl.s' MPA 7:25-8:6.) Even if there were any question about the amount and scope of all of the various alleged damages discussed above, the attorneys' fees, punitive damages, and injunctive relief alone place the amount in controversy well over $5 million.

### 1.   Defendant Demonstrated That Injunctive Relief Is Included In The Amount In Controversy

Plaintiff does not dispute, nor could she, that injunctive relief is properly included in the amount in controversy.  (Pl.'s MPA 7:25-8:2 (challenging only "no calculation")); *see Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005).  Courts regularly address that the value of injunctive relief would be substantial to the defendant.  *See, e.g.*, *Anderson v. Seaworld Parks & Entm't, Inc.*, 132 F. Supp. 3d 1156, 1163-65 (N.D. Cal. 2015).

As Defendant addressed in its removal papers, based on the claims alleged, any injunctive relief would likely involve Defendant having to undertake a complete revision of the product and/or its labeling.  As further set forth in the Declaration of Brian Nutter submitted with this Opposition, any such actions by Defendant would be extremely costly, burdensome, and would likely impact other Icy Hot products not involved in this lawsuit.  (Nutter Decl. Opp. Remand ¶¶ 7-8.)  Defendant estimates that any such modifications to its current practices would be at substantial cost to Defendant—which cost is properly part of the amount in controvrsy.  To the extent Plaintiff is seeking a more particular estimate of this relief, Plaintiff is seeking far more than what is required at this stage in the litigation.  *See Muniz v. Pilot Travel Centers LLC*, No. S–07–0325 FCD EFB, 2007 WL 1302504, at *2, (E.D. Cal. April 30, 2007) (noting that the defendant's burden is not "daunting").

### 2.   Defendant Demonstrated That Punitive Damages Are Included In The Amount In Controversy

As set forth in Defendant's removal papers, where punitive damages are recoverable as a matter of law, they may be included for purposes of determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001).  Punitive damages are an available remedy under the CLRA.  Cal. Civ. Code § 1780(a)(4).

Plaintiff concedes that punitive damages are properly included in the amount

in controversy, vaguely challenging the punitive damages only by noting "Chattem … proffers no calculation for these damages."  (Pl.'s MPA 7:25-8:2.)  Such a vague challenge is insufficient to effectively challenge Defendant's assertion of jurisdiction.  *See, e.g.*, *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 772 (7th Cir. 2014) ("A plaintiff does not automatically defeat a court's jurisdiction under CAFA by alleging the amount in controversy is below the jurisdictional requirement").

Instead, for purposes of determining removal amount in controversy, district courts consider a one to one (1:1) ratio of punitive to compensatory damages. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Bayol v. Zipcar, Inc.*, No. 14-cv-2483, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015). Under this ratio, Defendant would tally an additional amount equal to the amount of compensatory damages.  As punitive damages are pleaded in the Complaint, they are also properly included in the amount-in-controversy calculation.  Based on the discussion above regarding compensatory damages, this amount equals at least another $5 million.

### 3.   Defendant Demonstrated That Attorney's Fees Of More Than $1.2 Million Are Included In The Amount In Controversy

In its removal, Defendant identified that attorney's fees are included in the removal calculation, and further averred that courts have accepted 25% fee estimates for removal purposes.  (Def.'s Notice Of Removal 6:17-7:5 (citing cases).) Plaintiff does not dispute that attorneys' fees are properly included in the calculation, challenging only that the fees estimated by Defendant "seem[] to be a bit of a stretch" based on the early posture of this action.  (Pl.'s MPA 8:4-6.)

Plaintiff attempts to limit the attorney's fees in the amount in controversy to only those fees that Plaintiff's counsel have accrued to date.  Such a limitation, however, is unsupported and a clear attempt to reduce the amount in controversy by millions.  *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D.

Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal"); *Simmons v. PCR Tech*., 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002) ("Such fees necessarily accrue until the action is resolved. Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal").  As addressed in Defendant's removal papers, 25% of even a conservative $5 million amount in controversy (of which there is clearly more in this action) is $1,250,000. Plaintiff cannot artfully argue that the fees amount is less solely because the case is in its early stages.  *Stern v. RMG Sunset, Inc*., Case No.: 17-CV-1646 JLS (NLS), at *9 (S.D. Cal. May. 21, 2018) ("district courts in this circuit use the twenty-five percent benchmark to evaluate attorney's fees to determine the amount of controversy").

### D.    Defendant Has Demonstrated That The Amount In Controversy Greatly Exceeds $5 Million

In short, there can be no reasonable argument that the requisite amount in controversy is not met here, even based on conservative estimates.  As shown, with sales (translating into restitution or economic damages) exceeding $5,000,000, damages for physical injuries exceeding $5,000,000, punitive damages matching compensatory damages on a 1:1 ratio (at least another $5,000,000), and attorneys' fees of no less than $1,250,000,[6] the total amount in controversy is no less than $16,250,000.  Moreover, this amount does not include a calculation for injunctive relief, which would be costly and hugely burdensome for Defendant, adding further to the figure.  (Nutter Decl. Opp. Remand ¶¶ 7-8.)

---

[6] Defendant is calculating the attorneys' fees at $1,250,000 because in its removal papers it stated that 25% of no less than $5 million would be at least $1,250,000.  However, based on the calculations herein, attorneys' fees would actually be calculated at approximately $3,750,000.

## V.    CONCLUSION

For the reasons stated, federal diversity jurisdiction exists pursuant to CAFA. Accordingly, this action was properly removed to this Court, and Plaintiff has wholly failed to demonstrate that jurisdiction in this Court is improper. As such, and for the reasons set forth above, Defendant respectfully requests the Court deny Plaintiff's motion to remand.

Respectfully submitted,

Dated:  August 30, 2019          **DLA PIPER LLP (US)**

By: *_/s/Christopher M. Young_*
         CHRISTOPHER M. YOUNG
         RUTH N. DAPPER
         MICHELLE CHUNG
         Attorneys for Defendant
         CHATTEM, INC.